UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID APARICIO-ARTIAGA,

                Petitioner,

vs.                              Case No.  2:05-cv-325-FtM-29SPC
                                 Case No.  2:03-cr-116-FtM-29SPC

UNITED STATES OF AMERICA,

                Respondent.

_____/

### OPINION AND ORDER

_____This matter comes before the Court on petitioner David Aparicio-Artiaga's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #65)[1] filed on July 8, 2005.  The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 on September 9, 2005.  (Cv. Doc. #9).  Petitioner thereafter filed a Traverse (Cv. Doc. #11) and a Supplementation to Traverse and Memorandum of Law (Cv. Doc. #12).  For the reasons set forth below, the motion is denied.

---

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion. To avoid confusion, the Court will refer to the docket of Aparicio-Artiaga v. United States, No. 2-05-cv-325-FtM-29SPC, as "Cv. Doc.", and will refer to United States v. Aparicio-Artiaga, No. 2:03-cr-116-FtM-29SPC, as "Cr. Doc."

**I.**

On October 9, 2003, a federal grand jury in Fort Myers, Florida returned a one-count Indictment (Cr. Doc. #1) charging petitioner David Aparicio-Artiaga (petitioner or Aparicio-Artiaga) with illegally being found in the United States without permission after having been deported following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b). On March 2, 2004, the first day of trial, petitioner entered into a written Plea Agreement (Cr. Doc. #36) and plead guilty before the district court. (Cr. Doc. #35). On June 14, 2004, the Court sentenced petitioner to a 96 month term of imprisonment, to be followed by thirty-six months supervised release. (Cr. Doc. #46). Judgment (Cr. Doc. #47) was filed on June 17, 2004.

Petitioner through counsel filed a Notice of Appeal (Cr. Docs. #48, #49, #50)[2] on June 28, 2004. On March 10, 2005, the Eleventh Circuit Court of Appeals dismissed the appeal on the government's motion due to a valid appeal waiver provision contained in petitioner's Plea Agreement. (Cr. Doc. #64).

Petitioner filed this timely § 2255 motion on July 8, 2005. Read liberally, petitioner's § 2255 Petition sets forth the following claims: (1) His guilty plea was not voluntary because (a) it was induced by an understanding that he would receive a sentence

---

[2]The first two Notices of Appeal in the criminal file appear to be duplicates. The third Notice of Appeal is a *pro se* letter by defendant which was construed as a Notice of Appeal.

at the low end of the Sentencing Guidelines, but he received a sentence at the high end, (b) he did not understand the nature of the charge or the consequences of the plea, and (c) he was forced to waive the right to appeal the sentence and conviction; (2) his attorney was ineffective by allowing the court to sentence petitioner to the high end of the Sentencing Guidelines; and (3) he was denied his right to appeal because he was forced to waive his right to appeal in the Plea Agreement in violation of his Sixth Amendment rights.  Petitioner's Traverse, read liberally, raised the following new issues: (4) he was incompetent to stand trial or be sentenced because of mental problems and memory loss; (5) his attorney was ineffective by allowing him to plead guilty and be sentenced without investigating the extent of his injury and without requesting a competency examination and hearing; (6) the district court erred in not having petitioner examined for competency; and (7) his appeal waiver may not be enforced because he was not competent and he has little education and lacks fluency in English.  Petitioner's Supplementation to Traverse, read liberally, adds the following issues: (8) his guilty plea colloquy was defective because he was not informed that he was waiving his right to a jury trial under Article III, Clause 3, Section 2; and (9) a criminal defendant cannot waive any provision in Article III, including the right to a jury trial.

**II.**

-3-

Petitioner asserts that his guilty plea was not voluntary because (a) it was induced by an understanding that he would receive a sentence at the low end of the Sentencing Guidelines but he received a sentence at the high end, (b) he did not understand the nature of the charge or the consequences of the plea, and (c) he was forced to waive the right to appeal the sentence and conviction. Petitioner also asserts that his guilty plea colloquy was defective because he was not informed that he was waiving his right to a jury trial under Article III, Section 2, Clause 3, and in any event a criminal defendant cannot waive any provision in Article III, including the right to a jury trial.

**A.**

"A guilty plea is more than a confession which admits that the accused did various acts. It is an admission that he committed the crime charged against him. By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." United States v. Broce, 488 U.S. 563, 570 (1989)(internal quotations and citations omitted). For this reason, the United States Constitution requires that a guilty plea must be voluntary and defendant must make the related waivers knowingly, intelligently and with sufficient awareness of the relevant circumstances and likely consequences. United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n. 13 (1976). After a

-4-

criminal defendant has plead guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. denied, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty.  Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986).

To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea.  United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).  Rule 11 explicitly directs the district judge not to accept a plea without determining these core concerns.  Therefore, on review the Court is "warranted in regarding the court's acceptance of the plea as a positive finding on each [component of the Rule]."  United States v. Buckles, 843 F.2d 469, 472 (11th Cir. 1988), cert. denied, 490 U.S. 1099 (1989).

A defendant who fails to object to a Rule 11 error has the burden of satisfying the plain-error rule, Moriarty, 429 F.3d at 1019, and a reviewing court may consult the whole record when

considering the effect of any error on substantial rights.  <u>United States v. Vonn</u>, 535 U.S. 55, 74-75 (2002).  A petitioner "will rarely, if ever, be able to obtain relief for Rule 11 violations under § 2255," and such relief is available "only in the most egregious cases."  <u>United States v. Dominguez-Benitez</u>, 542 U.S. 74, 83 n. 9 (2004).

## B.

At the change of plea hearing the trial court personally addressed petitioner in open court.  (Doc. #59).  An interpreter was utilized and placed under oath (<u>Id.</u> at 2), although petitioner stated he understood some English and responded in English to some of the Court's questions (<u>Id.</u> at 3, 5).  Petitioner, who was in a wheelchair, stated that he wished to pled guilty to the one-count Indictment, as announced by his attorney.  (<u>Id.</u> at 3).  Petitioner was advised that the Court was required to find that his guilty plea was made freely and voluntarily and that there was a factual basis to support the guilty plea, and therefore he would be placed under oath and asked questions.  (<u>Id.</u> at 3-4).  Petitioner was told that if he did not understand anything the Court said he should have the Court further explain; he was also advised that he could confer privately with his attorney at any time during the plea.  (<u>Id.</u> at 4).  Petitioner was then placed under oath, and was advised of his obligation to tell the truth and that false statements could be prosecuted for perjury.  (<u>Id.</u>).  Petitioner said he understood.  (<u>Id.</u>).  Petitioner was also told that his testimony during the plea

colloquy could be used against him in any proceedings if he challenged the taking of the plea, the judgment, the conviction, or the sentence, which petitioner said he understood. (Id. at 4-5).

Petitioner answered some biographic questions, and stated he was not currently under the influence of any drugs, alcohol, medication or other intoxicant, had not used any such thing in the last 48 hours, had never been treated for the addiction to drugs or alcohol, was not currently under the care of a physician or psychiatrist, and had never been treated for any mental illness. (Id. at 5-6). When petitioner was asked whether to his knowledge he suffered from any mental or emotional disability, he responded he had a mental disability in that he lost consciousness sometimes because of an automobile accident. (Id. at 6-7). Petitioner said he had no other mental problems other than sometimes losing consciousness, and stated that he clearly understood where he was, what he was doing, and the importance of the proceeding. (Id. at 7).

Petitioner was then advised of the following by the Court: He was presumed innocent (Id. at 7); the burden of proof was upon the United States (Id.); the burden of proof was beyond a reasonable doubt (Id.); he had the right to plead not guilty and could persist in his not guilty plea (Id.); he had the right to a speedy and public trial (Id.); he had the right to a jury trial or a judge trial if he waived a jury trial (Id.); he had the right to the effective assistance of an attorney at trial and at every stage of

-7-

the criminal proceedings (Id. at 7-8); he had the right to confront the witnesses against him (Id. at 8); he had the right to hear and see the witnesses against him and have the witnesses who testify against him cross-examined (Id.); he had the right to present witnesses in his own defense (Id.); he had the right to compulsory process to obtain witnesses (Id.); he did not have to make any statement about the charges (Id.); he could not be compelled to incriminate himself (Id.); he could not be compelled to testify unless he wanted to testify (Id.); and if tried by a jury, all twelve jurors must unanimously agree on his guilt before he could be convicted (Id.).  Petitioner said he fully understood those rights.  (Id.)

Petitioner was then told that if he pled guilty there would be no further trial of any kind, and the Court would find him guilty and convict him on his plea.  (Id.).  Petitioner was informed that a plea of guilty admitted the truth of the charge, but that a plea of not guilty denied the charge.  (Id. at 8-9).  Petitioner said he understood this.  (Id. at 9).  Petitioner was then told that by pleading guilty he would waive and give up his right to trial, to confront and cross examine witnesses, to compulsory process for the attendance of defense witnesses, and against self-incrimination. (Id.).  Petitioner responded that he understood this as well. (Id.).

Petitioner was further advised by the trial court that he may have defenses to the charge, but by pleading guilty he would waive

those defenses, waive his right to challenge the way the government obtained any evidence, statements or confessions, and that he would lose the right to complain on appeal of any rulings of the Court in the case. (<u>Id.</u> at 10).  Petitioner acknowledged that he understood these points as well. (<u>Id.</u>).

Petitioner advised the Court that he had had enough time to discuss the case with his attorney, had discussed his case fully with his attorney, and had explained everything he knew about the case to his attorney. (<u>Id.</u>).  Petitioner stated he was satisfied with the way his attorney had represented him, and that he had no complaints either about what his attorney had done or what his attorney had not done. (<u>Id.</u>).  Petitioner also stated he had no complaints about the way he had been treated by anyone.  (<u>Id.</u> at 10-11).

Petitioner acknowledged receiving a copy of the Indictment (<u>Id.</u> at 11), and the court summarized the charge to him and specifically identified the elements the government would have to prove beyond a reasonable doubt.  (<u>Id.</u> at 11-12).  Petitioner stated that he understood what he was charged with, and had no questions about what the charge meant or what the charge was all about. (<u>Id.</u> at 12).  Petitioner was advised of the penalty for the offense, and acknowledged that he understood the penalty. (<u>Id.</u> at 12).  The court then explained the Sentencing Guidelines, told petitioner that no one could promise what sentence he would receive, and that if the court imposed a sentence which was more

severe than he anticipated he would not be allowed to withdraw his plea of guilty. (Id. at 12-14). Petitioner said he understood. (Id. at 14). The Court also advised petitioner that the Plea Agreement provided that the government would make certain recommendations, that the recommendations were not binding upon the court, and that if the court declined to follow any or all of the government's recommendations petitioner would not be allowed to withdraw his guilty plea. (Id. at 15). Petitioner stated that he understood this, had no questions about anything the court had said so far, and had understood what the court had said. (Id.).

Petitioner was asked how he pled to Count One, and he stated "I believe I am guilty because I have entered here, Mr. Judge, illegally." (Id. at 15-16). Petitioner told the Court that he was pleading guilty because he was in fact guilty and had committed the acts set forth in the charge. (Id. at 16). Petitioner stated that he understood that he was pleading guilty to a felony offense and understood the charge. (Id. at 16-17). Petitioner listened to a proffer of facts by the government, and admitted that the government's facts were true. (Id. at 17). When asked to explain in his own words why he was guilty, petitioner stated: "Guilty for not having presented myself to the authorities here in the United States. When I was deported, I entered Mexico, but at that time I had lost my family which was in '85 when there was an earthquake in the Federal District of Mexico. And I did not have any place to go. I tried to look for my family but I did not find it so then I

-10-

decided to come again to the United States where I had friends who helped me." (Id. at 17-18). Petitioner also responded to specific factual questions from the court. (Id. at 18). Petitioner stated the decision to plead guilty was his own independent decision made freely and voluntarily, and it was not the result of any threats, force, coercion, or intimidation. (Id. at 19-20).

Petitioner was handed the written Plea Agreement, and stated he had initialed on every page and had signed the last page. (Id. at 20-21). The Court reviewed material provisions in the Plea Agreement with petitioner. (Id. at 21-24). The court pointed out the paragraph in which the government anticipated not opposing his request for a sentence at the low end of the applicable Sentencing Guidelines range, and confirmed that petitioner understood that this was not binding upon the court and if the court did not accept the government's non-opposition petitioner would not be allowed to withdraw his guilty plea. (Id. at 23). The court also discussed the waiver of sentence appeal provision, which the court specifically explained. (Id. at 23). The court asked petitioner if this provision, as well as all the provisions of the Plea Agreement, were entered into freely and voluntarily, and petitioner stated "yes." (Id. at 24). Petitioner stated that no one had coached him or told him to testify differently than the truth, and stated that he had told the court the truth. (Id. at 24-25). Petitioner then reiterated his desire to plead guilty. (Id. at 25-26).

The Court found that petitioner was alert and intelligent; that he understood the nature of the charge against him and the possible penalties; that he appreciated the consequences of pleading guilty; that the facts which the government was prepared to prove and which petitioner admitted having committed stated all the essential elements of the crime; and that his decision to plead guilty was freely, knowingly, intelligently and voluntarily made after advice and counsel of a competent attorney. (Id. at 26). Petitioner agreed with each of the Court's findings. (Id. at 26).

### C.

Petitioner argues that his guilty plea was involuntary because it was induced by an understanding that he would receive a sentence at the low end of the Sentencing Guidelines, but he received a sentence at the high end. This claim is without merit. The Plea Agreement specifically advised petitioner that the government's non-opposition to his request for a low-end sentence was not binding upon the court, and if the court did not agree he would not be allowed to withdraw his guilty plea. (Cr. Doc. #36, p. 4, ¶ 7). Petitioner initialed this page and signed the Plea Agreement. The Court specifically drew this paragraph to petitioner's attention during the guilty plea colloquy (Cr. Doc. #59, pp. 15, 22-23), and again told petitioner the government's non-opposition was not binding upon the court and petitioner would not be allowed to withdraw his guilty plea if the court did not accept it. Petitioner stated he understood this. "[T]he representations of

the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The record clearly establishes that petitioner's guilty plea was voluntary in this regard.

Petitioner next argues that he did not understand the nature of the charge or the consequences of the plea.  This claim is also refuted by the guilty plea record.  As set forth above, petitioner acknowledged he had a copy of the Indictment, it was summarized to him by the court, the elements were specifically identified to him, and the penalties were explained.  The record fully supports the district court's finding at the time of the guilty plea that petitioner fully understood the nature of the charge and the consequences of the guilty plea.

Petitioner argues that he was forced to waive the right to appeal the sentence and conviction.  The Court of Appeals has specifically found that the waiver provision was valid and enforceable, which at least implicitly rejects this claim.  This is the law of the case.  United States v. Jordan, 429 F.3d 1032, 1035 (11th Cir. 2005).  Alternatively, the record clearly establishes

that the waiver provision was not forced upon petitioner.  The Court specifically called this provision to petitioner's attention during the plea colloquy, asked if it was entered into freely and voluntarily, and received a "yes" in response.  Accordingly, this issue is without merit.

Petitioner also asserts that his guilty plea colloquy was defective because he was not informed that he was waiving his right to a jury trial under Article III, Section 2, Clause 3.  Petitioner also asserts that a criminal defendant cannot waive any provision in Article III, including the right to a jury trial.  Petitioner is incorrect in both claims.

It has long been the law that a criminal defendant can waive the right to a jury.  Spann v. Zerbst, 99 F.2d 336 (5th Cir. 1938)[3].  Otherwise, a criminal defendant could not take advantage of plea bargaining, which has been authorized at least since Santobello v. New York, 404 U.S. 257 (1971) and which is specifically approved in Fed. R. Crim. P. 11(c).  As demonstrated above, the guilty plea colloquy in this case specifically told petitioner he had the right to a jury trial, and that a plea of guilty would waive a jury trial.  There is no requirement in Fed.

_____

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

R. Crim. P. 11 or elsewhere that the source of the right to a jury trial be explained to a criminal defendant.

The entirety of the guilty plea colloquy clearly establishes that petitioner understood what he was doing, and that the guilty plea was made knowingly and voluntarily. In light of the clear record of the plea colloquy, the Court concludes that petitioner's claims of an involuntary and unknowing guilty plea are without merit.

### III.

Petitioner next argues that his attorney was ineffective by allowing the court to sentence petitioner to the high end of the Sentencing Guidelines. This claim is without merit.

The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). See also Rompilla v. Beard, 125 S. Ct. 2456, 2462 (2005); Wiggins v. Smith, 123 S. Ct. 2527, 2535 (2003); Williams v. Taylor, 529 U.S. 362 (2000). A court must "judge the reasonableness of counsel's conduct on the facts of the

particular case, viewed as of the time of counsel's conduct." <u>Roe</u>
<u>v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466
U.S. at 690). This judicial scrutiny is "highly deferential." <u>Id.</u>
A court must adhere to a strong presumption that counsel's conduct
falls within the wide range of reasonable professional assistance.
<u>Strickland</u>, 466 U.S. at 689-90. An attorney is not ineffective for
failing to raise or preserve a meritless issue. <u>Ladd v. Jones</u>, 864
F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960
F.2d 970, 974 (11th Cir. 1992).

The record in this case establishes that defense counsel
argued that petitioner should be sentenced at the low end of the
Sentencing Guidelines (Cr. Doc. #60, pp. 5-6). Defendant addressed
the court, and stated that he wished to continue with his plea of
guilty and be sentenced, but requested leniency because he had lost
his leg in an automobile accident, never had the affection of his
parents, and had a difficult life. (<u>Id.</u> at 6-7). The government
did not oppose the request for a low-end sentence. (<u>Id.</u> at 7). The
Court stated it was not apparent why a low-end sentence was
appropriate (<u>Id.</u> at 7-8), and defense counsel again spoke on behalf
of a low-end sentence (<u>Id.</u> at 8-10). Government counsel also spoke
again on behalf of a low-end sentence. (<u>Id.</u> at 10). The court
rejected these requests, and sentenced petitioner to the high end
of the Sentencing Guidelines. (<u>Id.</u> at 10-13). Being unable to
convince the court of the merits of an argument is not a basis to
find ineffective assistance of counsel. Defense counsel made a

-16-

cogent argument, but it was simply rejected by the sentencing judge. Counsel's performance was not deficient, and petitioner did not receive ineffective assistance of counsel.

**IV.**

Petitioner argues that he was denied his right to appeal because he was forced to waive his right to appeal in the Plea Agreement. It is well established that sentence-appeal waivers are valid if made knowingly and voluntarily. <u>Williams v. United States</u>, 396 F.3d 1340, 1341 (11th Cir. 2005)(citing <u>United States v. Bushert</u>, 997 F.2d 1343, 1350-51 (11th Cir. 1993)), <u>cert. denied</u>, 513 U.S. 1051 (1994). Here, petitioner's Plea Agreement contained the following provision:

> The defendant understands and acknowledges that the defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. § 3553(f) and USG § 5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, a sentence in violation the law apart from the sentencing guidelines provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

(Cr. Doc. #36, p. 7, ¶ 5).   The district judge highlighted this waiver provision as part of petitioner's plea colloquy, specifically questioned petitioner concerning the specifics of the sentence-appeal waiver, and determined that petitioner knew about the waiver provision and had entered into the waiver agreement knowingly and voluntarily.   (Cr. Doc. 59, pp. 23-24, 26).   The Eleventh Circuit has already determined (Cr. Doc. #64) that petitioner's waiver provision was valid and effective, and this is the law of the case.   <u>Jordan</u>, 429 F.3d at 1035.   Alternatively, the Court would independently find that the appeal waiver was clearly knowing and voluntary under <u>Bushert</u>, 997 F.2d at 1350, and its progeny and therefore is valid and effective.   <u>United States v. Grinard-Henry</u>, 399 F.3d 1294, 1296 (11th Cir.), <u>cert. denied</u>, 125 S. Ct. 2279 (2005).

**V.**

Petitioner also raises several competency related issues. Petitioner asserts he was incompetent to stand trial or be sentenced because of mental problems and memory loss; that his attorney was ineffective by allowing him to plead guilty and be sentenced without investigating the extent of his injury and without requesting a competency examination and hearing; that the district court erred in not having petitioner examined for competency; and that his appeal waiver may not be enforced because he was not competent and he has little education and lacks fluency in English.   None of these claims have merit.

-18-

**A.**

It is well established that the conviction of a legally incompetent person violates due process.  Pate v. Robinson, 383 U.S. 375, 378 (1966); Cooper v. Oklahoma, 517 U.S. 348, 354 (1996); Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir. 1995), cert. denied, 517 U.S. 1247 (1996).  Petitioner bears the burden of proving by a preponderance of the evidence that he was incompetent to stand trial or plead guilty. Battle v. United States, 419 F.3d 1292, 1298 (11th Cir. 2005);  Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1259 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003); Watts v. Singletary, 87 F.3d 1282, 1290 (11th Cir. 1996), cert. denied, 520 U.S. 1267 (1997).  The test for competency to stand trial or plead guilty is the same:  whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether defendant has a rational as well as factual understanding of the proceedings against him.  Duskey v. United States, 362 U.S. 402, 402 (1960); Godinez v. Moran, 509 U.S. 389, 396 (1993); United States v. Nickels, 324 F.3d 1250, 1252 (11th Cir. 2003); Tiller v. Esposito, 911 F.2d 575, 576 (11th Cir. 1990).  A substantive competency claim such as this cannot be procedurally defaulted.  Battle, 419 F.3d at 1298.

A court has a due process obligation to conduct a competency hearing, even if not requested to do so, if there is reasonable cause to believe a defendant may presently be suffering from a

mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. <u>Pate</u>, 383 U.S. at 385; 18 U.S.C. § 4241.  In order to trigger the trial court's obligation to order a competency evaluation and hearing, the court must have information raising a "bona fide doubt" as to the defendant's competency. <u>Watts v. Singletary</u>, 87 F.3d at 1286-87.  This standard of proof is high, and the facts must positively, unequivocally, and clearly generate the bona fide doubt. <u>Battle</u>, 419 F.3d at 1299.  Relevant information includes evidence of defendant's irrational behavior, demeanor at trial or in hearings, and prior medical opinion regarding his competence. <u>Tiller</u>, 911 F.2d at 576.  If this procedural competency claim is not raised on direct appeal, it is procedurally defaulted. <u>Battle</u>, 419 F.3d at 1298.

**B.**

The substantive competency claim is without merit; the procedural competency claim has been procedurally defaulted because it was not raised on direct appeal, and alternatively is without merit.  There was never reasonable cause to believe petitioner may have been suffering from a mental disease or defect rendering him mentally incompetent to the extent he was unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Petitioner was examined about his competency at the guilty plea, and his responses clearly

demonstrate petitioner's competency to plead guilty and be sentenced. At sentencing the Court gave petitioner the opportunity to discuss various motions to withdraw his guilty plea which had been filed by inmates who were advising him. Petitioner stated that he wished to continue with his plea of guilty and be sentenced. (Cr. Doc. #60, pp. 6-7). As defense counsel stated in arguing for a low-end sentence, petitioner's problem was that he did not want to accept his attorney's representation that it could not be promised he would be allowed to stay in the United States. (Cr. Doc. #60, pp. 8-10). Far from not understanding the consequences of his plea, petitioner understood very well but did not like what he heard. In this case, the record establishes that petitioner never presented any bona fide doubt as to his competency to plead guilty or be sentenced and was in fact competent. The record clearly establishes that petitioner consulted rationally with counsel, had an understanding of the charge and the proceedings against him, and was competent.

Accordingly, it is now

**ORDERED**:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody (Cv. Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2.   The Clerk of the Court shall enter judgment accordingly and close the civil file.   The Clerk shall place of copy of the civil Judgment in the criminal file.

**DONE AND ORDERED** at Fort Myers, Florida, this   116th   day of February, 2006.


JOHN E. STEELE
United States District Judge


Copies:
David Aparicio-Artiaga
Counsel of record